UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-81407-CIV-SMITH

NATURAL LANDS, LLC,

    Plaintiff,
vs.

CITY OF BOCA RATON, *et al.,*

    Defendants.
    _____/

## OMINIBUS ORDER

This matter is before the Court on the Motion to Dismiss (the "City's Motion") [DE 12] filed by Defendant City of Boca Raton ("the City"), the Response in Opposition [DE 20] filed by Plaintiff and the Reply [DE 26]; and the Motion to Dismiss (the "District's Motion") [DE 15] filed by Defendant Greater Boca Raton Beach and Park District (the "District"), the Response in Opposition [DE 22] filed by Plaintiff and the Reply [DE 27]. The Complaint [DE 1] asserts claims against the City and the District for: (i) inverse condemnation; (ii) violations pursuant to the unconstitutional conditions doctrine; and (iii) declaratory judgment.[1] For the reasons set forth below, the City's Motion is **GRANTED IN PART and DENIED IN PART** and the District's Motion is **GRANTED.**

### I. FACTUAL BACKGROUND

Plaintiff owns a parcel of land (the "parcel") located at 2500 North Ocean Boulevard, Boca Raton, in Palm Beach County Florida. (Compl. [DE 1] ¶ 1.) The parcel is situated on the east side of State Road A1A and extends from the eastern right-of-way boundary for State Road A1A to the

---

[1] Count III of the Complaint asserts a claim for Declaratory Judgment only against the City.

1

approximate mean high-water line of the Atlantic Ocean. (*Id.*) The parcel is undeveloped, rectangular shaped and is approximately 14,111 square feet (0.32 acres), with approximately eighty-eight feet of frontage of State Road A1A. The parcel is a raw beachfront property that includes dunes and the dry sand beach. (*Id.*)

### A. Plaintiff purchases the parcel.

On August 2, 2011, the parcel was purchased by Plaintiff's predecessor in interest for $950,000. (*Id.* ¶ 2.) On July 18, 2011, the parcel was conveyed to Plaintiff via a Special Warranty Deed and is recorded in the Official Records Book 24667, Page 940 of the Public Records of Palm Beach County, Florida. (*Id.*) According to the Complaint, the parcel is designated by the City's Comprehensive Plan Future Land Use Map as Residential Medium. (*Id.* ¶ 4.) This designation allows lot owners within that boundary the ability to develop their lots with family dwelling structures. (*Id.*) It is also alleged that the parcel is designated as Residential Multifamily (R-3-F) on the Official Zoning Map adopted by the City, a designation permitting lot owners to build up to two (2) family dwelling structures on the lot. (*Id.* ¶ 5.) Plaintiff alleges that lot owners who are zoned R-3-F possess a vested right to build one single-family home on their lots. (*Id.*)

### B. The application process

Beginning in 1997, several applications—all of which were denied—were made to the City for permission to develop the parcel as a single-family home or to use the vested development rights from the parcel in a larger development on another nearby property. (*Id.* ¶ 38.)

### i. Plaintiff applies for a Lot Width Variance and Front Yard Setback Variance for the first time.

On October 27, 2011, Plaintiff begun its application process with the City for approval to build a single-family home on the parcel. (*Id.* ¶ 6.) The Complaint alleges that as part of this application process, the City required several applications for zoning variances. (*Id.* ¶ 47.)

Additionally, the City determined that a Lot Width Variance Application and a Front Yard Setback Variance Application would be required to build a single-family home on the parcel. (*Id.* ¶ 48). Plaintiff filed its applications for a Lot Width Variance and a Front Yard Setback Variance after a meeting with the City on October 27, 2011. (*Id.* ¶¶ 48-49.) On November 8, 2011, the City informed Plaintiff that the parcel lies seaward of the Coastal Construction Control Line ("CCCL") established by the Florida Department of Environmental Protection ("FDEP"), requiring an additional application to build seaward of the CCCL. (*Id.* ¶ 50.) Plaintiff hired a marine engineer and a biologist to work with FDEP over the next six months to remove any state objections to constructing the single-family home seaward of the CCCL and filed another application for the required CCCL Variance on June 28, 2012. (*Id.* ¶¶ 51-52.) On August 7, 2012, the City informed Plaintiff that it also required a zoning hardship justification statement or report to be submitted along with the CCCL Variance Application. (*Id.* ¶ 53.) On October 8, 2012, Plaintiff submitted a zoning hardship justification statement to the City. (*Id.* ¶ 54.) On October 19, 2012, the City advised Plaintiff that the Lot Width and Front Yard Variance Application must be submitted to the City's Zoning Board of Adjustment (ZBOA) while the CCCL Variance Application must be submitted to the EAB. (*Id.* ¶ 55.)

Over the next four months, the City requested revisions and additional information, which Plaintiff submitted. (*Id.* ¶¶ 56-58.) In addition to complying with these requirements, Plaintiff also paid the EAB review fee of $1,580.02 on January 10, 2013. (*Id.* ¶ 60.) On March 4, 2013, the City informed Plaintiff that its CCCL Variance Application was incomplete. (*Id.* ¶ 62.) The City later requested that Plaintiff provide eighteen (18) sets of plans drawn in engineering scale and three (3) signed and sealed survey showing all proposed structures, easements, right-of-way and reservation for one single-family home. (*Id.* ¶ 64.)

On July 12, 2013, the City informed Plaintiff that it required additional payment of $5,000.00 for the CCCL Variance Application to be reviewed by an outside consultant, which Plaintiff paid. (*Id.* ¶¶ 68-69.) Plaintiff alleges that this process was atypical and not previously required by the City of any other applicant. (*Id.* ¶ 72.) Further, Plaintiff alleges that the City's demands for it to expend time, money, and effort to produce such assessments or reports were arbitrary and capricious, intended solely for the purpose of delay, obfuscation and increased cost as precursor to the City's eventual denial of Plaintiff's application. (*Id.* ¶ 72.)

### ii. Plaintiff applies for a Second Lot Width and Front Yard Setback.

On April 27, 2015, Plaintiff submitted a Second Lot Width and Front Yard Setback Application to the City, seeking to build a single-family detached dwelling on the parcel, and paying an application fee of $3,095.00. (*Id.* ¶ 77.) The City required Plaintiff to undergo an additional application process in which Plaintiff objected to. (*Id.* ¶¶ 78-79.) However, and despite having objections, Plaintiff continued the process. (*Id.* ¶ 79.)

### iii. The City's environmental expert provides a draft evaluation report and Plaintiff's application is considered.

On February 2, 2015, the City's environmental expert, Michael Jenkins, P.E., provided a draft evaluation report as part of Plaintiff's second application. (*Id.* ¶ 80.) In the draft evaluation report, Michael Jenkins opined that the proposed dwelling structure was consistent with the City's code requirements for coastal construction. (*Id.* ¶ 80.) On July 15, 2015, Plaintiff's application was placed on ZBOA's August 13, 2015 agenda for consideration. (*Id.* ¶ 81.)

On August 13, 2015, ZBOA met regarding Plaintiff's applications for variance, ultimately denying them. (*Id.* ¶ 84.) On August 26, 2015, Plaintiff appealed this decision. (*Id.* ¶ 85.) On September 22, 2015, the application was sent back to ZBOA for further consideration. (*Id.* ¶ 86.) On November 12, 2015, the ZBOA denied Plaintiff's Lot Width and Front Yard Setback

Application for variance. (*Id.* ¶ 87.) Plaintiff appealed ZBOA's decision in late November 2015. (*Id.* ¶ 88.) On December 8, 2015, the Council adopted Resolution No. 155-2015, approving the Lot Width and Front Yard Setback Application variances subject to certain conditions. (*Id.* ¶ 89.)

### iv. The City receives complaints from residents and has discussions with the District about acquiring the parcel.

Following approval of Plaintiff's variance, the City was contacted by residents, urging it to reconsider the partial variance approval granted to Plaintiff. (*Id.* ¶ 96.) Soon thereafter, it is alleged that residents began urging the District to acquire the parcel. (*Id.* ¶¶ 97-101.) The District contacted several owners of privately owned vacant buildable oceanfront properties within the City, seeking acquisition of these oceanfront properties. (*Id.* ¶¶ 102-107.) On January 18, 2017, the District was informed that the parcel was not for sale. (*Id.* ¶ 108.)

Discussions continued between the City and the District regarding acquisition of the parcel. (*Id.* ¶¶ 156-161.) On August 24, 2017, the City inquired whether the District had considered using its eminent domain powers to acquire the parcel. (*Id.* ¶ 156.) On August 30, 2017, the District directed its staff to investigate with respect to using eminent domain to acquire the parcel. (*Id.* ¶ 157.) On September 5, 2017, the District begin the pre-suit process of acquiring the parcel using eminent domain and hired eminent domain counsel. (*Id.* ¶ 158.) On December 12, 2017, the District obtained a preliminary appraisal valuation for the parcel. (*Id.* ¶ 159.) On April 30, 2018, the City informed the District that it would not be reimbursed for any costs for beachfront property should the District undertake any eminent domain proceedings. (*Id.* ¶ 162.)

### v. Plaintiff applies for a permit from FDEP and despite receiving this permit, the City denied Plaintiff's application to build a single-family home.

On February 15, 2016, Plaintiff applied for a permit from FDEP to construct a single-family home seaward of the CCCL in the City. (*Id*. ¶ 109.) On June 6, 2016, the City provided

5

a zoning confirmation letter stating that the parcel satisfied the minimum setback, zoning and lot size requirements for a single-family detached dwelling. (*Id.* ¶ 115.) Based on this letter, on June 22, 2016, Plaintiff updated its CCCL Variance Application with the City. (*Id.* ¶ 116.)

On October 7, 2016, FDEP issued Permit Number PB-11196, permitting the construction of a single-family detached dwelling on the parcel. (*Id.* ¶ 117.) The City did not object to the permit. (*Id.* ¶118.) Plaintiff spent over $200,000.00 to obtain the permit. (*Id.* ¶ 119.) Despite having received the permit, the City allegedly continued denying Plaintiff the right to build a single-family home on the parcel. (*Id.* ¶¶ 120-123.) For instance, Plaintiff alleges that the City required Plaintiff to revise its plans to come into conformity with the April 29, 2015 Plans. On September 16, 2016, Plaintiff submitted its revisions. In late October 2016, the City claimed the revisions did not satisfy the City Resolution 155-2015. (*Id.* ¶ 125.) The City required additional revisions to Plaintiff's CCCL Variance Application. (*Id.* ¶ 125.) On April 20, 2017, Plaintiff submitted these revisions to the City. (*Id.* ¶ 128.)

On August 18, 2017, the City advised that specific details were missing from the CCCL Variance application. (*Id.* ¶ 130.) On September 30, 2017, Plaintiff submitted a revised application. (*Id.* ¶ 131.) Following the submission, Plaintiff met with the City to discuss the CCCL Variance Application and the revisions thereto. (*Id.* ¶ 132.) Once again, Plaintiff was required to resubmit its entire CCCL Variance Application package to the City. (*Id.* ¶ 133.)

### vi. Plaintiff submits a revised CCCL Variance Application.

On March 7, 2018, Plaintiff submitted a revised CCCL Variance Application to the City, which was rejected. (*Id.* ¶ 135.) On May 14, 2018, the City required Plaintiff to revise its CCCL

Variance Application to reflect a newly adopted Building Height Definition.[2] (*Id.* ¶ 136.) The City also required Plaintiff to submit the revised application to outside environmental consultants and the City's EAB. (*Id.*)

On February 2, 2015, Michael Jenkins submitted another expert report but this time, recommended denying the CCL Variance Application due to potential adverse impacts to the dune system and the sea turtle nesting habitat. *(Id.* ¶¶ 151-155.)

### vii. A final hearing is held on Plaintiff's fourth CCCL Variance Application before the EAB and City Council.

From September 7, 2018 until March 12, 2019, no decision was made with respect to Plaintiff's CCCL Variance Application, and despite Plaintiff making repeated requests regarding the status of its application. (*Id.* ¶ 164.) Plaintiff's Variance Application was scheduled for a hearing before the EAB on April 10, 2019. (*Id.* ¶ 166.) Plaintiff alleges that its application should not have gone before the EAB because the parcel is not designated as "environmentally sensitive lands" requiring a hearing before the EAB. (*Id.*)

On April 10, 2019, EAB held a quasi-judicial hearing. (*Id.* ¶ 167.) The EAB voted 5-0 in favor of recommending denial of the CCCL Variance Application and relying heavily on the second report provided by Michael Jenkin, P.E. (*Id.*) Plaintiff objected and demanded a final hearing on the fourth CCCL Variance Application before the City Council. (*Id.* ¶ 168.)

On July 9, 2019, the City notified Plaintiff that the CCCL Variance Application would be heard on July 23, 2019. (*Id.* ¶ 169.) Prior to the hearing, Plaintiff filed a motion to recuse three council members who would be presiding over the matter. (*Id.* ¶¶ 170-171.) The motion was denied and on July 23, 2019, the City denied Plaintiff's CCCL Variance Application with a 5-0

---

[2] On or around November 14, 2017, the City adopted a new definition of "Building Height." (Compl. ¶ 137.) Plaintiff was never informed of this new definition. (*Id.*)

7

vote. (*Id.* ¶ 172.) Plaintiff contends that the denial by the City was a regulatory taking of the parcel and imposition of unconstitutional conditions upon Plaintiff's use of the land. (*Id.* ¶ 175.)

On October 16, 2019, Plaintiff filed its three-count complaint against the City and the District. On November 25, 2019, the City moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On December 3, 2019, the District also moved to dismiss the Complaint for failure to state a claim.

## II. LEGAL STANDARD

The purpose of a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the facial sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted. *Id.* It should be read alongside Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When a complaint is challenged under Federal Rule of Civil Procedure 12(b)(6), a court will presume that all well-pleaded allegations are true and view the pleadings in the light most favorable to the plaintiff. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). However, once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," it must determine whether the well-pled facts "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A complaint can only survive a 12(b)(6) motion to dismiss if it contains factual allegations

that are "enough to raise a right to relief above the speculative level, on the assumption that all the [factual] allegations in the complaint are true." *Twombly*, 550 U.S. at 555. However, a well-pled complaint survives a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556.

## III. DISCUSSION

### A. The City's Motion to Dismiss

#### i. The Complaint is an improper shotgun pleading.

As an initial matter, the Court finds that dismissal is warranted because the Complaint is a shotgun pleading. Shotgun pleadings are "cumbersome, confusing complaints that do not comply with" Federal Rule of Civil Procedure 8. *Yeyille v. Miami Dade Cty. Pub. Sch.*, 643 F. App'x 882, 884 (11th Cir. 2016). The Eleventh Circuit has categorized four basic types of shotgun pleadings: (1) those in which "each count adopts the allegations of all preceding counts;" (2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" (3) those that do not separate each cause of action or claim for relief into a different count; and (4) those that assert multiple claims against multiple defendants without specifying which applies to which. *Id.* (internal citation omitted). "The unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.*

The Complaint contains characteristics of the first, third and fourth type of shotgun pleading. Specifically, Plaintiff asserts claims against both the City and the District without specifying which claims applies to which. Further, each count incorporates factual allegations pertaining to the City and the District without discerning which facts relate to which defendant.

9

The first count also seeks redress under both federal and state law, and thus, appears to be two claims really alleged as one.[3]

It is no secret that the Eleventh Circuit condemns shotgun pleadings. *See Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (identifying categories of shotgun pleadings); *Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 979–80 (11th Cir. 2008) (condemning shotgun pleading that bunched together "untold causes of action" in one count); *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279–80 (11th Cir. 2006) (noting that shotgun pleading fails to make the connection between "the substantive count and the factual predicates . . . [such that] courts cannot perform their gatekeeping function with regard to the averments of [the claim]."); *Pelletier v. Zweifel*, 921 F.2d 1465, 1517-18 (11th Cir. 1991) (describing shotgun pleadings as "replete with factual allegations that could not possibly be material to any of the causes of action they assert."); *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008) (shotgun pleadings are "replete with factual allegations and rambling legal conclusions.") (citation omitted). Because the Complaint is an impermissible shotgun pleading, it is dismissed without prejudice. *See Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 662 (11th Cir. 2009) ("When faced with a shotgun pleading, a district court must <u>sua sponte</u> give the plaintiff at least one chance to repled a more definite statement of her claims before dismissing her case with prejudice.") (emphasis in original). Because the Complaint constitutes as an impermissible shotgun pleading, dismissal is warranted.

---

[3] Despite Plaintiff seeking redress under both federal and state law, the City's Motion only addresses dismissal of the federal claims. Thus, the Court does not address whether the Complaint adequately states a cause of action under Florida law. Nonetheless, the Court finds that upon amendment of the Complaint, Plaintiff should plead its state and federal claims separately.

### ii. The Complaint sufficiently alleges a claim for the taking of a "vested right" under Florida law.

The Court finds that the Complaint sufficiently alleges a claim for taking of a "vested right" under Florida law. In *Coral Springs Systems, Inc. v. City of Sunrise*, the Eleventh Circuit held that vested rights could be created when a party had reasonably and detrimentally relied on existing law, creating the conditions of equitable estoppel. 371 F.3d 1320, 1338 (11th Cir. 2004). Under Florida law, the doctrine of equitable estoppel may be invoked if a plaintiff relied "(1) in good faith (2) upon some act or omission of the government and (3) has made such a substantial change in position or has incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the right acquired." *W. Flagler Assoc., Ltd. v. City of Miami*, 407 F. Supp. 3d 1291, 1298 (S.D. Fla. 2019) (holding plaintiff sufficiently alleged the elements of estoppel to sustain its due process claim); *Hollywood Cmty. Synagogue, Inc. v. City of Hollywood, Fla.*, 430 F. Supp. 2d 1296, 1325 (S.D. Fla. 2006) (denying motion to dismiss as to plaintiff's substantive due process claim where plaintiff alleged sufficient facts supporting a vested right).

Plaintiff alleges that the City's denial of its application to build a single-family home on the parcel was arbitrary and capricious and that this denial caused Plaintiff to lose all economic or beneficial use of the parcel. (Compl. ¶¶ 174-175.) Further, Plaintiff alleges that for over an eight-year time span, Plaintiff incurred extensive obligations and expenses in response to repeated demands made by the City and to obtain permission to build a single-family home on the parcel. (Compl. ¶¶ 44-95.) Plaintiff alleges that it expended time and sums of money as an attempt to meet the conditions imposed by the City and relying on the City's requirements. (Compl. ¶ 79.) Taken these allegations as true, Plaintiff has alleged that it relied in good faith and to its detriment on the City's representations, such that subsequent denial of the property right acquired would be unjust and inequitable. *See Hollywood Cmty. Synagogue, Inc.*, 430 F. Supp. 2d at 1325. Thus, the

Court finds that Plaintiff has sufficiently alleged a claim for taking of "vested rights" under Florida law.

### iii. The Complaint sufficiently alleges a claim for inverse condemnation.

Next, the Court turns its attention to Count I of the Complaint. The City contends that this count should be dismissed because Plaintiff's inverse condemnation claim is not ripe for adjudication. More specifically, the City argues that the Complaint fails to articulate a basis for any contention that the challenged regulation has gone "too far" since the Complaint makes clear that Plaintiff only applied for one single project and there have apparently been no other denials by the City of applications to develop the parcel. (Mot. [DE 12] at 11-15.) Plaintiff contends that its inverse condemnation claim is ripe for adjudication under the futility exception. (Resp. [DE 20] at 7-11.) The Court agrees that the futility exception applies to the inverse condemnation claim.

### a. Plaintiff brings three different inverse condemnation claims.

Before the Court can determine whether Plaintiff's inverse condemnation claim is ripe, the Court must look to the type of inverse condemnation claim Plaintiff asserts. The Supreme Court has defined an action for inverse condemnation as:

> a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency.

*United States v. Clarke*, 445 U.S. 253, 257 (1980). "The taking clause of the Fifth Amendment to the United States Constitution permits such actions as it prohibits the taking of private property for public use without just compensation." *Bensch v. Metro. Dade Cnty.*, 952 F. Supp. 790, 793 (S.D. Fla. 1996). "In order to bring this claim, it must be ripe meaning 'the government entity charged with implementing the regulations has reached a final decision regarding the application

of the regulations to the property at issue.'" *Lost Tree Village Corp. v. City of Vero Beach*, 838 So. 2d 561, 570 (Fla. 4th DCA 2002) (citation omitted).

In general, our courts have recognized a ripeness requirement regarding the pursuit of an inverse condemnation action, in accordance with the case and controversy aspect of our jurisdiction under Article III of the United States Constitution. *Bensch*, 952 F.Supp. at 733. "An aggrieved plaintiff is directed to initially approach the regulatory body whose actions have affected plaintiff's property interest." *Id.* at 794. "Evidence of this approach, or its attempt, informs a court's later determination as to whether the regulating body's action is final (or complete)—a requirement for the initiation of an inverse condemnation action in federal court." *Id.*[4]

There are four types of claims and remedies available to a plaintiff presenting a taking issue. "A plaintiff can claim that her property was taken without just compensation by a regulation, *in violation of the just compensation clause of the Fifth Amendment*, i.e., that there is no provision to award her compensation; the remedy available to a successful plaintiff is monetary compensation for actual loss of value." *Id.* (emphasis in original.) A plaintiff may also claim that the application of a regulation destroys the value of her property to such an extent that it is a taking by eminent domain. *Id.* The Eleventh Circuit has identified this type of claim as a due process takings claim and the remedy available to a successful plaintiff is invalidation of the application of the regulation and perhaps, actual damages. *See Eide v. Sarasota Cnty.*, 908 F.2d 716, 721 (11th Cir. 1990), *overruled on other grounds by Knick*, 139 S. Ct. at 2162. The third claim is called an arbitrary and capricious or substantive due process claim, in which the remedy for such

---

[4] The Supreme Court recently overturned the second prong of this two-part ripeness requirement in *Knick v. Township of Scott, Pa.*, 139 S. Ct. 2162 (2019). Following *Knick*, a plaintiff is no longer required to seek recompense in state court before filing an inverse condemnation claim in federal court. Thus, our analysis focuses on whether the Complaint satisfies the first prong of the ripeness requirement.

13

violation is determined by whether the regulation is challenged on its face (for which a striking of the regulation is the remedy) or whether the challenge is directed to the regulation as applied (for which an injunction or damages may be awarded). *Bensch*, 952 F. Supp. at 794. The final claim available to plaintiff is an equal protection claim in which a general injunction is the remedy for a facial challenge. *Id.* The remedy for an as-applied equal protection claim is an injunction against the application of the regulations to plaintiff's property. *Id.*[5]

Plaintiff brings several different inverse condemnation claims. Plaintiff alleges that "between 2015 and 2018, the City and District conferred, discussed, and desired to use their statutory powers of eminent domain to acquire the parcel." (Compl. ¶ 179.) This suggests that Plaintiff brings a due process takings claim. Plaintiff also alleges that the denial of its application and refusal to allow development of the parcel was arbitrary and capricious, (Compl. ¶ 182), suggesting that Plaintiff seeks to bring a substantive due process inverse condemnation claim. Plaintiff also alleges that "[t]he City's and District's actions are in violation of the 5th Amendment to the United States Constitution, which provides '[n]or shall private property be taken for a public use, without just compensation.'" (*Id.* ¶ 185.) This suggests that Plaintiff brings a taking without compensation claim.

Plaintiff's inverse condemnation claims are all subject to the same ripeness standard. *Bensch,* 952 F. Supp. at 795 (stating that the standard of ripeness regarding the final decision requirement are identical under a taking without compensation claim and a due process takings claim); *Eide*, 908 F.2d at 724-25 (applying the finality prong to an-applied arbitrary and capricious due process claim). Applying this standard, the City argues that dismissal is warranted because

---

[5] The ripeness requirement is not uniformly applied in cases raising the issue of an alleged taking and the Eleventh Circuit has noted the apparent confusion regarding the standard to be applied based on the nature of the claim alleged. *Bensch*, 952 F. Supp. at 794.

the rejection of a single request for an intense development—in this case the single request to build a single-family home—does not conclusively determine whether Plaintiff will be denied all reasonable beneficial use of the property. (Mot. at 11-15.) In sum, the City argues that Plaintiff has not obtained a final decision regarding the development legally permitted on the parcel, and thus, the inverse condemnation claim is not ripe. (*Id*.)

### b. The futility exception applies.

Plaintiff argues, however, that a limited exception applies to its inverse condemnation claim. (Resp. at 7-11.) More specifically, Plaintiff argues that the ripeness doctrine does not require a landowner who alleges a regulatory partial taking to file meaningless, futile application to the governmental agency. (Resp. at 8.) Courts have recognized a limited exception to the ripeness requirement that might exist where, by virtue of past history, repeated submissions would be futile. *See Eide*, 908 F.2d at 727; *Lost Tree Village Corp.*, 838 So. 2d at 571. This limited exception can negate the requirement of pursuing further administrative remedies and the governmental action is effectively treated as a final decision. *Lost Tree Village Corp.*, 838 So. 2d at 571.

Here, Plaintiff alleges that it has made a meaningful, eight-year application to the City; has faced repeated denials; and argues that any further submissions to the City would have been futile because it is clear that the City never intended to grant Plaintiff's application. (Compl. ¶ 178.). Accepting the allegations of the Complaint as true, the Court agrees with Plaintiff and finds that the futility exception applies. *See, e.g.*, *Hillcrest Prop., LLP v. Pasco Cnty.*, 731 F. Supp. 2d 1288, 1295-96 (M.D. Fla. 2010) (denying motion to dismiss where plaintiff asserts that it would be futile to pursue administrative remedies purportedly available to landowner). As such, Plaintiff has

sufficiently alleged a claim for inverse condemnation. The City's Motion as to Count I is **DENIED.**

### iv. Plaintiff has not sufficiently alleged a claim pursuant to the unconstitutional conditions doctrine.

The unconstitutional conditions doctrine "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Hillcrest Prop., LLP*, 915 F.3d at 1298-99. The Supreme Court defined this concept thoroughly in the case of *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013). Under *Koontz*, the unconditional conditions doctrine prohibits extortionate demands because such demands frustrate the Fifth Amendment right to just compensation. 570 U.S. at 605. "[B]y conditioning a building permit on the owner's deeding over a public right-of-way, for example, the government can pressure an owner into voluntarily giving up property for which the Fifth Amendment would otherwise require just compensation." *Id.* at 605. *Koontz* makes clear that an unconstitutional conditions claims is its own constitutional cause of action that is "predicated" on some other enumerated constitutional right. 570 U.S. at 610.

The Complaint alleges that "[b]eginning on November 8, 2011 and continuing to the present day, the City has impermissibly denied [Plaintiff] a government benefit—the right to build a single family home on property that has been zoned for single family homes since it was first platted in 1932." (Compl. ¶ 190.) Further, it is alleged that "from the date [Plaintiff] filed its application until the present date, the City has never had any intention of granting its application to build one single family home on the parcel, despite the fact that the parcel is zoned for single family homes and surrounded by single family and multifamily homes." (*Id.* ¶ 191.) The Complaint goes on to allege that the City—for over eight years—continued to demand more and more from Plaintiff knowing that it would never approve Plaintiff's application or permit Plaintiff to build a single-

16

family home on the parcel. (*Id.* ¶¶ 193-203.) However, the Complaint fails to allege that the City imposed any conditions before agreeing to issue the requisite permits and variance necessary to build a single-family home on the parcel. (*See generally* Compl.) Instead, Plaintiff alleges that the City simply denied its applications.

In its response, Plaintiff argues that the City imposed unconstitutional conditions by demanding repeated payments for several applications, review and expert/professional fees and that each factual allegation setting forth the City's demands supports its claim. (Resp. at 14.) The Court disagrees, however, with Plaintiff's contentions. The requirements imposed by the City were not conditions precedent before the permits could be granted or were ever granted—as evident by the fact that the permits were never granted. Under *Koontz*, there can be no taking claim "[w]here the permit is denied and condition is never imposed . . . ." 570 U.S. at 609. In sum, Count II of the Complaint fails to sufficiently allege a claim under the unconstitutional conditions doctrine.

### v. Count III survives dismissal.

The Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), permits a court to declare the rights of parties only in cases of "actual controversy." 28 U.S.C. § 2201. An actual controversy exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *GTE Directories Publ'g Corp. v. Trimen America, Inc.*, 67 F.3d 1563, 1567 (11th Cir. 1995). Because the Declaratory Judgment Act does not enlarge the Court's jurisdiction, Plaintiffs must show, at a minimum: (1) that they personally have suffered some actual or threatened injury as a result of the alleged conduct of the defendant; (2) that the injury fairly can be traced to the challenged action; and (3) that it is likely to be redressed by a favorable decision. *Perret v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d

1333, 1346 (S.D. Fla. 2012). The Complaint alleges that Plaintiff has suffered some actual or threatened injury as a result of the City's/District's purported conduct, including the City's denial of the building permits. As such, this alleged injury can be traced to the challenged action. Lastly, the injury is likely to be redressed by a favorable decision.

The City argues for dismissal of Count III because the requested declarations are entirely redundant with the other counts contained in the Complaint. (Mot. at 17-18.) The Court disagrees with this contention. "The purpose behind the Declaratory Judgment Act is to afford a [] form of relief from uncertainty and insecurity with respect to rights, status and other legal relations." *Rozier v. Hartford Ins. Co. of the Midwest*, No. 14-Civ-20547, 2014 WL 6751639, at *4 (S.D. Fla. Dec. 1, 2014). In Count III, Plaintiff seeks a declaration of the rights of the parcel under Florida law. As such, Count III survives the City's Motion.

### B. The District's Motion to Dismiss

The Court now addresses the District's Motion to Dismiss. The District argues that dismissal is warranted pursuant to Federal Rule of Civil Procedure 12(b)(6) because the District can not be held liable for a regulatory taking where it did not implement the regulation responsible for the purported taking. (Motion [DE 15] at 3.) The Court agrees.

Plaintiff relies on several cases in arguing that multiple governmental entities whose collective efforts cause a taking of private property can be held liable for a taking claim. (Resp. [DE 22] at 4.) Although the Court agrees with this point to a certain extent, this argument is not without fault. In *Lost Tree Village Corp.*, 838 So. 2d at 561, for example, multiple governmental agencies faced combined liability where each entity implemented their own respective regulations, purportedly depriving the plaintiff there from using its property. That is not the case here. Instead, the only governmental regulations being challenged are regulations implemented by the City. The

Complaint is silent as to any regulations implemented by the District that are now being challenged. Instead, it is Plaintiff's position that the District's influence—and interest in acquiring the Plaintiff's land—is enough to subject the District to liability for a taking claim. This argument is unpersuasive. The Court agrees with the District and finds that Plaintiff has not sufficiently alleged a taking claim against the District where there are no allegations that the District implemented its own regulations. For this reason alone, Count I and Count II of the Complaint are dismissed as to the District.

Even if Plaintiff could bring claims against the District, the inverse condemnation claim would not be ripe. Plaintiff does not allege that the District has reached a final decision regarding the application of the subject regulations to the parcel, as required to bring an inverse condemnation claim. Nor could Plaintiff make such allegations. The Complaint makes clear that Plaintiff's applied to the City for permission to build upon the parcel. (*See generally* Compl.) Other than alleging that the District contemplated acquiring the parcel, there are no allegations of Plaintiff having any direct interactions with the District. Instead, Plaintiff argues that the District's pre-suit investigation and contemplated acquisition played a significant role in furtherance of the City's purported bad faith scheme to deprive Plaintiff of all economic and beneficial use of the parcel without just compensation. (Resp. at 3.) However, there are no allegations of any regulations implemented by the District to support an inverse condemnation claim. Furthermore, Plaintiff does not allege that the District reached a final decision regarding the application of the regulations to the property at issue, which is necessary to bring an inverse condemnation claim. *See Lost Tree Village Corp.*, 838 So. 2d at 570 ("In order to bring [an inverse condemnation] claim, it must be ripe meaning 'the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.'").

19

Because Plaintiff's inverse condemnation claim as to the District is not ripe, Count I is dismissed.[6] Accordingly, it is

>**ORDERED that:**
>
>1. Defendant City of Boca Raton's Motion to Dismiss [DE 12] is **GRANTED IN PART and DENIED IN PART** for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6);
>
>2. Defendant Greater Boca Raton Beach and Park District's Motion to Dismiss [DE 15] is **GRANTED**.
>
>3. Plaintiff Natural Lands, LLC shall amend its Complaint within ten (10) days following the entry of this Order.
>
>**DONE AND ORDERED** in Fort Lauderdale, Florida, this 21st day of September 2020.

RODNEY SMITH
UNITED STATES DISTRICT JUDGE

cc: Counsel of Record

---

[6] The Court adopts its prior reasoning for dismissing Count II against the District.